NATIONAL HARROW CO. v. QUICK et al.

(Circuit Court of Appeals, Seventh Circuit. May 4, 1896.)

No. 278.

1. PATENTS—WHAT CONSTITUTES ANTICIPATION.
    To constitute anticipation, it is enough that a like structure had been in well-established use, whether it originated in design or by accident.
2. SAME—INVENTION—SPRING-TOOTH HARROWS.
    The Reed patent, No. 201,946, for improvements in harrows, construed, and held void for want of invention.
    67 Fed. 130, affirmed.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant, the National Harrow Company, brought this suit against the appellees, Frank Quick and E. Lindahl, to obtain an injunction against infringement of letters patent No. 201,946, issued April 2, 1878, to De Witt C. Reed, assignor of the complainant, for improvements in harrows. The specification and drawings of the patent, excepting formal parts, are as follows:

"My invention relates to improvements in harrows, and more particularly to that class of harrows wherein the teeth are spring teeth, or of bow form. My invention consists more particularly in a novel means for adjusting the tooth so as to give to its point a greater or less depth of cut, which is effected by making that portion of the tooth which is adjacent to the frame

curved and resting on a curved seat, and secure it thereto by a clip or its equivalent, by the loosening of which the tooth may be thrown forward or pushed back beneath its fastening, thus lowering or raising its point, as will be hereinafter set forth and claimed.

"In the drawings, Fig. 1 is a plan view and Fig. 2 a sectional view of a harrow tooth and section of a harrow frame embodying my invention. Fig. 3 presents a separate view of a clip which secures the tooth upon its curved seat. Fig. 4 represents a variation, wherein, instead of employing a clip, I may employ two bolts and a plate. Fig. 5 presents another variation, in which a plate is secured by a clip passing over it. Fig. 6 presents another variation, wherein the clip is employed, but introduced from the opposite side of the frame from that upon which the tooth rests, and in connection therewith a plate and nuts. A is a section of a harrow frame. B is a curved harrow tooth, the tooth being of a character known as 'spring tooth,' though, so far as my invention is concerned, the said tooth may or may not be a spring tooth. C is a curved seat, formed on the frame, and made to conform

in its curvature to that of the curved tooth which rests upon it. D is a clip whereby the tooth is secured upon its seat. The cross-bar or loop portion of the clip is formed concave upon its under side, and with a concavity greater than the corresponding portion of the harrow tooth, so that when brought down to a firm bearing upon the tooth this cross portion of the clip will find a firm bearing at its edges upon the tooth, and hold it snugly and rigidly upon its curved seat. If the depth of cut is too great, it is only necessary to loosen the nuts upon the clip, and then slide the tooth backward on its curved bearing, which action raises the point of the tooth. When in its proper position the clip is again firmly secured by the nuts. If the tooth has not a sufficient depth of cut, the clip is loosened and the tooth slid forward on its curved bearing, and finally secured in its proper position. It is apparent that my invention admits of variations without departing from its principle. Thus, instead of employing a continuous clip, that part resting upon the tooth may be simply a bar or plate perforated at its ends for the passage of bolts, which bolts are drawn snug by nuts upon the other side of the frame. So, also, a plate might rest upon the harrow tooth, and be held in its place by an ordinary clip, of uniform dimensions throughout, the plate not being perforated, but simply grooved along that portion where the clip passes, in order to hold the clip in its place; or the clip might be inserted from the opposite side of the frame, and its prongs passed through the plate adjacent to the harrow tooth, and be there secured by nuts. Other forms will readily suggest themselves, the principal feature of my invention being that the tooth shall rest upon a curved seat, and be capable of being adjusted longitudinally through its said seat, and thereby either elevate or depress its working point. I am aware that it is not new with me, broadly considered, to adjust a harrow tooth longitudinally upon its frame so as to vary the depth of cut thereof, and hence I do not include the same in my invention. What I claim is:

"(1) The combination, with a harrow frame and harrow tooth secured thereon, so as to be longitudinally adjusted, of a fastening clip, formed as described, whereby only its two transverse edges have bearing against the tooth, substantially as set forth.

"(2) The combination, with a harrow frame provided with a curved seat, of a curved tooth and clip or its equivalent, D, substantially as and for the purposes described."

Numerous prior patents are referred to in the answer, but two only are in evidence, namely, No. 95,458, issued on October 5, 1869, to David L. Garver for improvements in harrows, and No. 125,216, issued on April 2, 1872, to Linus A. Paddock, for improvements in horse rakes. The harrows of the appellees, on which the charge of infringement is predicated, were made in conformity with letters patent No. 444,248, granted on January 6, 1891, to Huson V. Miller, in which the invention is said to relate to spring-tooth harrows, "and particularly to the manner of securing the teeth to the cross-beams of the hollow frame." The characteristic features are a diagonal channel on the under side of the cross-beam, in which is sunken a rectangular metal plate, one corner of which extends beyond the beam on either side. The curved tooth is placed in the channel against this plate, and is held in position tightly or loosely by means of a transverse clip and bolts which pass through the ends of the clip and through the beam above. The drawings perhaps indicate that the plate on the side next to the tooth is flat, but there is nothing in the specification or claims to limit it to that form. Besides denying invention and infringement, the appellees answered to the effect, as stated in the opinion of the circuit court, "that the complainant is a combination or trust attempting to hold and use its naked legal title as assignee for purposes contrary to public policy, and that a court of equity ought not to aid its unlawful purposes by entertaining the present bill." This answer the court sustained, and, though conceding in deference to prior decisions the validity of the patent, held it to be limited to "the terms of the specification and claims, and not infringed." See Harrow Co. v. Quick, 67 Fed. 130.

W. H. H. Miller and E. H. Risley, for appellant.

V. H. Lockwood, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

While not prepared, in view of the authorities, to sanction the proposition that the infringer of a patent may escape liability by showing that the legal owner is engaged in a supposed unlawful combination or trust, we do not consider the point. We think the dismissal of the bill justified upon other ground. There is in the record before us proof of many adjudications in different circuit courts whereby the Reed patent was declared valid, but in one instance only (Reed v. Smith, 40 Fed. 882) has the opinion of the court been reported. These adjudications, except the first, it is fair to assume, were governed largely by the well-known rule of comity by which one federal court follows the ruling of another, especially in patent cases, and are therefore not entitled to the weight of so many independent judgments. In Reed v. Smith, upon a showing of newly-discovered evidence, some of which appears in this record, a rehearing was granted, and the case was disposed of without going to a final decree. The reported opinion, however, is no less valuable on that account, and in some respects it is helpful in the present discussion. Upon a comparison of the claims of the patent as originally made with those allowed, the conclusion is there declared, in which we fully concur, that it did not involve invention, or anything more than mechanical skill, to adapt the adjustment of the rake teeth shown in the Paddock patent to the teeth of a spring harrow. "While the adoption of this device," it is said, "was undoubtedly a happy thought and appears to have been the one thing necessary to insure the popularity and general use of the spring-tooth harrow, we do not think it belongs to that class of conceptions which the law dignifies by the name of 'invention;'" and accordingly it was held "that the clip, which lies at the foundation of the plaintiffs' patent, is limited to a curved clip with biting edges, designed to hold the tooth rigidly in its seat." It is clear, therefore, that Reed, though the specification of his patent shows that he would have had it understood differently, was in no sense "a pioneer in the art of adjusting curved teeth longitudinally upon their seats." It was permitted to him finally to claim only an improved form of clip for fastening the teeth in place. Paddock's device showed for that purpose simply a clamping hook, located at the middle of a curved and grooved seat; but evidently it was not beyond the powers of ordinary skill and knowledge to devise or adapt or adopt other forms equally effective. In the language of Reed's specification, "other forms will readily suggest themselves." It is not to be said judicially, of course, that in such a field, narrow as it was, invention was impossible; but it is very clear that if there was novelty in this "curved clip with biting edges" it was at most a very slight and formal advance in the art beyond what was known, or was of very easy production. If, for instance, the single hook in the Paddock device, when applied to a harrow, failed to hold the tooth firmly, what was there to do more readily than to employ two hooks at the ends of the seat, either with or without a third one at the middle, and in what respect would the two at the ends have differed mechan-

ically from the ends or edges of the clip in Reed's patent? Plainly such a use of two hooks in lieu of one could not be invention, and it will hardly be said to have been beyond mechanical skill to devise a firm connection between the two hooks so as to require the use of but one bolt to move them or to hold them in place. An equally obvious expedient was a curved clamp, corresponding more or less nearly in length with the seat and in curvature with the tooth to which it was to be applied. Indeed, it is apparent on the evidence before us, which in part is the newly-discovered evidence for the admission of which the decree in Reed v. Smith was opened, that such a curved clamp, even with biting edges, was in use upon the hay-rakes of Paddock long before Reed had constructed his device. Whether Paddock is worthy of belief when he says that the curve of his clamp was intentionally made such that only its ends would have a transverse bearing upon the tooth, is immaterial. A sample of the clamp, produced in evidence by the appellant, is clearly of that construction, whether it was made so intentionally, or, as it is insisted and perhaps has been testified, by "the natural shrinkage of the metal, which always takes place at the projecting points first." To constitute anticipation of a later patent it is enough that such a construction had been in well-established use, whether it originated in design or by accident. It may be that the curvature illustrated by the sample of clamp in evidence varies so little from the curve of the tooth that when pressed down the ends would not touch the tooth with a biting edge as distinctly as in some of the forms illustrated in the Reed patent, but it is to be observed that neither in the specification nor claims of that patent is the word "biting," or its equivalent, to be found, though it is often used with emphasis in the briefs, and some of the clips illustrated, instead of biting edges, have distinctly rounded ends, whose force in holding the tooth in place under conditions of equal pressure must always be in proportion to the degree of possible friction, which in turn must be in proportion to the area of the surfaces brought into instant contact. It is to be observed further that, if the curvature of a tooth and its seat be the same, the application of a clamp of whatever form will not affect the curve of the tooth, but if the seat be flat, and longer than the clamp, as, for instance, it is shown to be in the Miller patent, the tooth under pressure of the clamp will lose curvature, and approach a straight line. If the clamp and tooth be of the same normal curvature, the application of pressure will produce between them a crescent-shaped space, and so the clamp, which along its whole length at first touched the tooth, at last has a transverse bearing only at its ends. In other words, upon a seat which is flat, or is less curved than its tooth, any clamp which is shorter than the seat, and has a curvature not less than that of the tooth, becomes in use, "a curved clip with biting edges," and, if it were not an anticipation, would be an infringement of the patent in suit.

Upon these considerations, and others of like character which might be suggested, we are clear that this patent is void of invention, and on that ground the decree below is affirmed.