## BELLOWS et al. v. NEW YORK CENT. R. CO.

### SAME v. PRESSED STEEL CAR CO.

(Circuit Court of Appeals, Second Circuit. May 12, 1920.)

Nos. 182, 183.

1. Patents ⬉328—693,218, for car construction, anticipated.

The Bellows patent, No. 693,218, for a car having a longitudinal sill with a sectional end spliced to the body of the sill at a point between the body bolster and its end, to facilitate removal and repair of the end portion in case of injury from collision or buffing *held* void for anticipation by uses in the prior art.

**2. Patents ⟵27(2)—Using repair methods in new construction not invention.**

The idea of using in new cars a construction theretofore used in repair jobs *held* not invention.

Appeal from the District Court of the United States for the Southern District of New York.

Suits by Arthur B. Bellows and others against the New York Central Railroad Company and against the Pressed Steel Car Company. Decrees for defendants, and complainants Bellows and Slack appeal. Affirmed.

George H. Parmelee and Clarence P. Byrnes, both of Pittsburgh, Pa., for appellants.

Alfred W. Kiddle and Wylie C. Margeson, both of New York City, for appellees.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. These actions were heard as one and will be treated in one opinion.

[1] When the actions were tried in the District Court, the Cambria Steel Company, an exclusive licensee of the appellants, joined in the action. The claims were held invalid in the District Court and the Cambria Steel Company refused to prosecute an appeal. Its license agreement, dated February 21, 1900, contained the following clause:

"This agreement is based upon the understanding that the patents of the parties of the first part are valid, and if any of them shall be invalid, or shall infringe patents to others, the party of the second part shall have the right to surrender this agreement, and shall not thereafter be obliged to pay royalties under it."

Prior to making this agreement, the Cambria Steel Company was not engaged in the business of making structural steel cars, but became engaged in such manufacture thereafter. Under the license agreement, they agreed to pay the appellants $5 per car, and did so up to the date of the decree below. Many cars were built, and a considerable sum was paid as royalties. When the Cambria Steel Company refused to further pay royalties, or to prosecute this appeal, a motion for a severance of parties was granted, and thereafter the individual plaintiffs prosecuted the appeal. A motion was thereafter made to dismiss this appeal. It was denied. At the time of such denial, it was determined to hear the merits of the appeal, when we might reconsider the motion to dismiss. The license to the Cambria Steel Company appears to be a right to make and sell the cars, using the construction which the appellants contend, is covered by their patent. It was not an assignment. Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923. The Cambria Steel Company could not sue in its own name alone, and Bellows and Slack were made parties. We are satisfied that the appellants have an interest in maintaining the validity of the patents. The patent has expired, and no injunction can be granted. The infringement alleged at bar is in reference to the

car made by the manufacturer and used by the railroad company in 1910. Notice of infringement was not given until 1915. However, we shall pass upon the merits of the case, rather than dismissing the appeal, as urged by the appellees.

The patent in suit relates to a sill, which has been referred to as a "spliced sill," used in the manufacture of the underframe which supports the car body of freight cars. Frames of this and like character were made of wooden beams and planking prior to 1898. Then the steel car made its appearance. Steel plates and sheets were pressed by high hydraulic presses into different shapes, and replaced wooden parts in the wooden cars. Among the parts wherein steel replaced wood were the lateral sills, which not only supported the load, but were obliged to meet the buffing blows and collisions, which are of everyday occurrence in the life of a freight car.

On the 11th of February, 1902, the patent here considered was granted to Bellows. Later the appellant Slack obtained an interest in the patent by assignment. Claims 2 and 3 of the 13 claims of the patent are in suit, and are as follows:

"2. A car having a longitudinal sill with a sectional end spliced to the body of the sill at a point between the body bolster and its end, substantially as described.

"3. A car having at the side a plate girder with an end portion detachably fixed to the body of the plate girder at a point between the body bolster and the end, substantially as described."

In his specifications the inventor says:

"The center sill and plate girders are preferably made sectional—that is to say, divided at each end at a point between the body bolster and the end of the car—and spliced, as at *B*; the splicing, which is sufficiently illustrated in Fig. 3, being effected by suitable flanged sections and rivets. The object is that, in case the car should be injured at the end by collision, the damaged end sections of the sill and plate girders may be detached and replaced with relatively small cost, as compared with cutting out and replacing the entire sill, as in prior car constructions, or replacing the entire plate girders. Within the scope of my broader claims I may, however, make the sill, or the plate girders, or both, continuous throughout their length. For economy of construction I preferably form plate girders of less depth from the body bolster outwardly than between the body bolster, as shown at *12* in Fig. 1."

The act of infringement relied upon by the appellants, was the sale of a car on July 26, 1910, by the Pressed Steel Car Company, and the use of said car by the New York Central Railroad Company. Reading the patent, taken in conjunction with the testimony of the inventor, it is clear to us that the invention relates to making longitudinal sills of cars in sections and splicing end portions or sectional ends of the central portion of the sills at a point between the body bolster and the end of the car; the object or purpose being to easily repair the end sections of the sill, if damage should occur by reason of collision or buffing, the thought being that the repair would be less costly, and, instead of the entire sill crumbling or bending, which might result in the loss of the entire structure, the greater part of the car could be spared damage by the injury being confined to the sectional end, due to the splicing of the sills at a point between the body bolster and the end of the car. The splicing of the sills, referred to, at a point be-

tween the body bolster and the end, does not confine the construction to original construction, but may involve the repair of a section of the car which may have been damaged by collision. The longitudinal sill, referred to in claim 2, is not limited to any particular character of sill. It may be composed of metal beams and of suitable section, as the specification reads. It comprehends any kind of a sill, whether it be wood or metal, or a composite of wood and metal. The plate girder referred to in claim 3 (which is referred to in the specifications as metal in the side sills) is used in the side sills, as it is referred to in the specifications as "metal plates having one or more flanged metal pieces at the top and bottom edge." Thus the inventor utilized web plates with a reinforcing angle on the top to form the top chord, and a reinforcing angle on the bottom forming the bottom chord.

We are satisfied that these plate girder sides, when used in gondola or flat cars, are cargo-carrying members, intended to carry part of the load, and in turn transmit the same to the body bolster. The plate girder, extending between the body bolster and into the space between the body bolster and the end of the car, is the body or web of the plate girder, and it is to this that the end portion or sectional end is to be spliced by flanged sections and rivets. The manner of uniting the central and end portions is by a butt splice. The webs of the central and end portions abut each other and are spliced together by means of spliced plates. In the construction of these cars by the Cambria Steel Company, using this sectional sill, the lower angle or chord is continuous from end to end of the car. It is by thus splicing that the inventor is able to "remove and replace without necessarily removing the car from the track or even unloading the car." Whether this is done, as claimed by the inventor, must necessarily depend upon the force of the collision and damage done. It is contended by the appellant that it requires the features of the two claims to make up the total of Bellows' invention of the detachable underframe end, but we fail to find any combination of the features of the two claims together referred to in the patent. It is not referred to as a "detachable underframe end," nor does the patent require the splice to be adjacent to the body bolster. This is not found in the claims in suit. We agree with the District Court that the claims refer to details of construction.

[2] On examining the prior art and prior uses in this structural sill art, we are not convinced that the appellant Bellows was the first to make a successful structural sill car. Hardie and Reese built a car with structural steel shapes long prior to Bellows' period. The Lehigh Valley tender underframe, which has been offered in evidence, shows the method of splicing these underframes by the splicing of center sills. The proofs establish that for many years prior to the inventor's date of conception the Lehigh Valley Railroad Company had followed the practice of splicing center sills of damaged locomotive tender underframes. Center sills and side sills were of rolled channels, the lightest of them being about 6 inches in depth, and some were 12 inches in height. Any experience which this railroad company had, and in which the injury was sustained by collision, it was found that it resulted principally in bending or breaking the center sills between

the body bolster and the end sills, and its spliced center sills, comprised of rolled channel, and extended through the bolster at each end of the car, and had sectional ends spliced thereto at a point between the bolster and the end sills. The drawings which were offered in evidence clearly show the cars having true body bolsters. Nor can it be said that this is not an apt case of inception, because the construction as used by the Lehigh Valley Railroad Company was in connection with a tender. It is true that the inventor here entitles his patent a steel car; but, when examined as to claims and specifications, it is found that the invention has to do with the sills used in car construction. The appellants are therefore confronted with the rule so long established and time-honored: That which infringes, if later, would anticipate, if earlier. Peters v. Active Mfg. Co., 129 U. S. 530, 9 Sup. Ct. 389, 32 L. Ed. 738; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059.

Applying an old contrivance in a new way, if such it be, to this analogous subject of constructing the underframe of a car, without any novelty in the mode of applying the old construction to the new purpose, is not a valid subject-matter of patentable invention. The idea that using the construction theretofore used in repair jobs for new cars is not invention. National Harrow Co. v. Quick, 74 Fed. 236, 20 C. C. A. 410.

It also appears from the testimony that there were 2,000 Baltimore & Ohio cars made embodying center sills having sectional ends spliced thereto at a point between the body bolster and the end of the cars—precisely the construction contended for in claim 2 of the patent in suit, and part of which were delivered on December 20, 1899. Some of these cars went into service before the date of this application. We think the construction of these cars anticipates appellants' invention. An examination of the drawings of the so-called Erie cars, contract for which construction was made August 2, 1899, and as appears from a tracing dated December 11, 1899, shows the central longitudinal sill with a sectional end spliced to the body of the sill at a point between the bolster and its end. The first car was delivered February 25, 1900, and the last car shipped May 19, 1900. In view of this construction, we cannot escape the conclusion that the idea of splicing was originated by Mr. Hanson. He supervised the construction at the Pressed Steel Car Company's plant. In the latter part of 1896 and the early part of 1897 one Hardie, of Pittsburgh, designed a steel hopper car for the Pittsburg, Bessemer & Lake Erie Railroad. The drawings, which were completed January 22, 1897, and under which a large number of cars were built by the Schoen Pressed Steel Company, provided for a plate girder side with an end portion detachably fixed to the body of the plate girder by spliced plates running forward and back of the bolster. It is immaterial that the lower angle of this car is continuous from end to end, for the reason that in the appellants' structure, as indicated in the patent in suit, the lower chord or angle 9 of the plate girder side projects beyond the bolster for the purpose of being utilized as one of the splicing members. This is what was done in the Hardie car. The sectional end of the Hardie

car is just as detachably fixed to the plate girder side as a sectional end or end portion of the appellants' car. The Hardie car discloses the use of the plate girder side as a load-carrying member with a sectional end spliced thereto, and this construction will permit the sectional end or end portion of the plate girder side to be replaced in a damaged car just as readily as in appellants' car, by removing the rivets at the head of the bolster, uniting the section end with the gusset plate, and either straightening or cutting off the lower angle. This sectional end may be repaired.

We think that, construing claim 3 either broadly or reading it literally, and limiting it to a construction in which the web of the plate girder side extends beyond the bolster into the space between the bolster and the end of the car, to which extended web a sectional end is spliced, or the splicing of the sectional end in front of or at or back of the bolster, the result is the same—the Hardie car is a complete anticipation. In addition thereto, it is clear that the Reese car, the drawings of which were made in the spring of 1897, which was placed in service on June 28, 1897, with the Pittsburg, Bessemer & Lake Erie Railroad, and which has been constantly in use since, anticipates the patent in suit. In these cars the load was carried by the plate girder side; the center sills being utilized for the attachment of draft riggings and for the transmission of pulling and buffing strains. The sectional end of the plate girder side in this car can be replaced just as readily as in appellants' car. It would only be necessary to remove the rivets passing through the upper angle, the web, and the lower angle of the sectional end. The fact that this freight car has been in constant use since that date is sufficient answer to the claim of commercial failure. Indeed, the subject of splicing ends of the car was considered in the proceedings of the Master Car Builders' Association in 1897. This method of construction of underframe was advocated by Mr. Barr, and we think he clearly sets forth the extension of the longitudinal sills into the space between the bolster and the end sill, and that to these extending ends of the lateral sills there could be secured section ends to bridge the space between the lateral sills and the end sills, so that, in ordinary case of damage, repairs could be made without disturbing the general frame. It may be that Bellows has improved on Barr's idea, but the mere fact that the new method of construction is a better one than the old, requiring perhaps less repair and having greater strength than the old one, does not alter the rule that it is not invention to produce a mere change in an instrument or machine of one material into another. Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852.

We conclude that the splicing of the sills between the bolster and the end of the car was not new, and that the appellants' patent has been anticipated by uses in the prior art.

The decrees are affirmed.